All right. Good morning, all. We're here on the third case of the calendar. S.E. Property Holdings, LLC v. Ruston Welch. Are you ready to proceed? We are. Good morning. Good morning. Richard Gahl for S.E. Property Holdings, LLC, also against Neverve. We have Amicus on the other side, if it pleases the court, counsel. We venture now to the exciting world of commercial law. Indeed, remedies available in Florida under the Fraudulent Transfer Act, or what we are addressing today, remedies available against a fraudulent transferor in Florida include monetary damages, monetary relief, punitive damages, and attorney's fees. Section 726… Can we turn to the punitive damages because that's the one that's less clear to me. Do you think that that would be appropriate to certify to the Florida Supreme Court? The question… Well, let me say this. First and foremost, I don't think the DCA opinions, McCalla, Hansard, others, really address punitive damages. Freeman does not address punitive damages. And so the Florida Supreme Court has not spoken to it. But the question is, is there a sufficient persuasive indication of what the Florida Supreme Court would do? We believe given the breadth of the statute, given the holdings of the DCAs, given the sister circuits and the uniformity of the law, for example, the rationale that the persuasive indication is that the Florida Supreme Court would allow punitive damages. However, if this court is unsure, then it might be appropriate. But the first question, the threshold question for the district court below was, first of all, if the Florida Supreme Court hasn't spoken to it, what do the DCAs say? As Your Honor well knows. And then if there's a conflict, you go to the DCA that you're in, which in this case was McCalla, which did hold that damages could be awarded against a transferor and a transferee. So can we extrapolate from that? We say yes. The persuasive indication is certainly punitive damages should be allowed given the breadth of the language of the statute. 1C3 says, in an action for relief against a transfer, a creditor may obtain, subject to applicable principles of equity, and in accordance with the rules of civil procedure, importantly, any other relief the circumstances may require. Any other relief. Any means any. Other is not limited by the word in that phrase, equity, law, non-monetary. Relief is not so limited. The circumstances may require contemplates myriad fact patterns involving fraudulent transferors. We know this, and I don't say this. Let me ask you something that goes to both your request for monetary relief generally and your request for punitive damages. Why is it that you would want those things against a defunct organization that doesn't have any money? I mean, the whole point of the fraudulent transfer claim is the idea that, you know, I give Judge Lagoa all my money, and so there's nothing for you to take, and yet you're trying to sue me and not her. Why are you doing that? In this case, Nevervee is the fraudulent transferor. They're the instigator, correct? This action uniquely, in part, takes place in Oklahoma where the transferee is located. Nevervee is a Florida entity. It's still existing. Last I checked, it's still existing. And importantly, very well, in Oklahoma, in both the district court case and in the bankruptcy case, there is still the possibility that the funds that were transferred, the BP proceeds that were transferred, which is the harm that we're talking about, that were transferred may very well be coming back to Nevervee, which is a Florida entity. So this isn't just some vain, unnecessary appeal. Certainly, we think the law should be correct. We think the district court read 108 way too narrowly. But setting that aside, there is something there for us to collect, ultimately. And if the Oklahoma cases rule that way, and we have two different ones, we have a fraudulent transfer case against the transferee, end of this transfer in Oklahoma. There's also a disgorgement action in the bankruptcy case involving these same funds. I'm sure the court's familiar with these sorts of BP proceeds in which we claim a security interest. I see. So it's sort of a belt and suspenders type thing. You've got an action against the transferee, and if for some reason the money comes back to the transfer, you want a judgment against the transfer. That's the idea. Yeah. So given that that's the objective here, why would punitive damages be on the table for this kind of thing? Why would a court say, you know what? You don't only get the thing that was transferred. You also get money on top of that. Well, on the insolvency part, I don't know that it matters today how insolvent that particular defendant is. I think we need to look at the principle of whether punitive damages could be recovered. It may very well be that never be resurrects beyond the funds coming back from Oklahoma. I don't know, but still the principle remains. To answer your question, without deterrence remedies like punitive damages remedies, and by the way, the statute says any other relief the circumstances may require, without deterrence remedies such as that, what would prevent someone from transferring assets when the worst outcome would be the return of the assets? What would they have to lose? The policy decision is important insofar as without that sort of relief that the court could impose under certain circumstances. You want to have us guess that the Florida Supreme Court would find that that language would suffice to award punitive damages. So I looked, and I did not find a Florida case that awarded punitive damages for equity in law. It's not really equitable relief. It's inequity. You know under Florida law, you have to have a statutory provision that allows punitive damages. So you want us to read that very loose language to be able to award punitive damages. Well, two things. One, any other relief has been found in both Alabama and Florida, as this court has determined to allow for punitive damages, the catch-all does. But don't forget also the Uniform Fraudulent Transfer Act in Florida incorporates also principles of law and equity, including fraud, which supplement those provisions. And Florida certainly has a statute, 768-72, which allow in intentional conduct cases allows for punitive damages, which certainly actual fraud would include intentional conduct. Now, I'm not asking this court to guess what the Florida Supreme Court would do. Rather, what we are saying is this, that if the court were inclined to make that determination, if the court were inclined to do it, the persuasive indication is that the Florida Supreme Court would find that. Why? Because the sister circuits, the sister states in the circuit have done it for very compelling reasons, as stated by this court. The policy reason I just gave, what's there to lose? Yeah, I mean, the what's there to lose makes sense to me. But then again, on the other hand, just what's there to gain? Because isn't every fraudulent transfer going to involve someone who is trying to dispose of their assets in a way that leaves them judgment-proof? Not necessarily in a way that rises to the level of actual fraud. Remember, there are multiple factors. Yeah, no, but I guess my point is, the fraudulent transfer, I mean, maybe I'm wrong about the way I understand this, and please correct me if I'm wrong, but the reason why this exists, this fraudulent transfer cause of action exists, is to prevent, you know, you get a judgment against me, I give all my assets to someone else, you can get those assets back, you can trace them back, you can grab that money. When am I ever going to get enough money to satisfy a punitive damages reward on top of that, right? Well, there are instances, and the cases arising in the 11th Circuit, Judkins, for example, Alliant v. Murphy out of Georgia, both district court cases that went up on appeal to the 11th Circuit and were affirmed, and the court actually quoted that rationale, and they said, look, there are, remember the statute says, if the circumstances may require, it gives, there are potentially, and I don't mean to cast aspersions, but there are potentially nefarious transferors out there who act to such a level that the courts are given, the Florida Legislature didn't limit it, the Florida Legislature said, any other relief the circumstances may require. Now, Freeman said you couldn't have ADER and a better liability, a wholly new cause of action, but here the Florida Legislature said, look, we're going to give the courts the ability to fashion relief that makes sense here, and there are going to be instances, there are going to be instances when attorney's fees should be awarded because otherwise there would be a chilling effect for the creditor to seek the recovery, and in both Alabama and Georgia in the sister circuits, they have said punitive damages should be available. It doesn't mean it's going to be awarded in every circumstance, it means it gives the availability. And remember, Section 112 of FFTA also says that the Florida Legislature said we are attempting to conform. I'm not saying it will always conform, but in one way it is the same in Alabama, Florida, and Georgia. The catch-all is that broad. I see that my time is up. I apologize for going over. Thank you. But I did want to, actually, before you step down, the property in question is still not in the possession. That is true. It's not currently in the possession of Never V, but we believe that 1C1 and 1C3 of 108 allow for a non-dissipation injunction because what's to keep Never V, if the money does come back, what's to keep the principles of Never V from sending it in some other direction? We believe the statute is broad enough to allow the non-dissipation of the funds. Otherwise, and by the way, we need to go determine liability. If we wait, Never V, if there's not that prohibition, then Never V could get the funds back and off we go again, off to the races on the same type of conduct. Okay, thank you. Thank you, Jill. Judge Lagoa, and may it please the Court. As the Court is well aware, its job in this case is to predict how the Florida Supreme Court would interpret the remedial provisions of the Fraudulent Transfer Act and not to create uniformity with how Georgia or Alabama might interpret the provisions of their similar acts. Here, Florida Supreme Court precedent, the plain text of the act, and common sense all point in the same direction. Because the act provides only a limited set of equitable remedies to creditors who seek to set aside a fraudulent transfer, the Florida Supreme Court is likely to interpret the act not to allow money judgments against transferors, punitive damages, or attorney's fees. First, the Florida Supreme Court's decision in Freeman makes clear that that  Can I ask you a question? Since I was focused on the equitable lien claim, I just want to confirm, that claim was not brought under a FFTA? So my understanding is that there was both equitable remedies sought under the Florida Fraudulent Transfer Act in Counts 1 through 3 and a separate equitable lien claim in Count 6. With respect to Count 6, the district court correctly found, and as far as I'm aware, SEPH barely protests that Florida law says that if you're not in possession, you're not entitled to a lien. With respect to the Uniform Fraudulent Transfer Act claims, that claim was waived below on the basis of the district court finding that the transferees were indispensable parties for any equitable relief, expressly including an equitable lien, and that ruling has not been challenged here. Thank you. Even if that weren't the case, though, Your Honor, we think that the same rule about being in possession would apply to any attempt to seek an equitable lien under the Uniform Fraudulent Transfer Act. And the request for a non-dissipation injunction is news to me. In Document 63 at page 7, the request was made for money damages expressly because the district court had so limited them, and I don't think that that should be allowed to be raised here for the first time on appeal. What would you say about the Hansard case where the – actually, I'm not entirely familiar with the way the Florida Appeals Courts work, but I can't remember which DCA it was, but it just seemed like it had very similar facts. So the Hansard case is the fourth DCA, I believe, which wouldn't be the DCA at issue here in the first DCA. It arose in the context of deciding whether a jury trial would be appropriate, but it did expressly resolve that a money judgment would be appropriate against the transferor. But for many reasons, I think the Florida Supreme Court is likely to disagree with that conclusion, primarily because the Florida Supreme Court itself has said that they do not read the act as creating an independent tort or as a vehicle by which a creditor might bring a claim for damages against anyone other than the transferee, and that's backed up by the plain text of the statute. In 109-2, the act expressly contemplates that a money judgment might be available against certain kinds of transferees and capped at the amount needed to satisfy the creditor's claim or the amount transferred, whichever is less. So that makes clear that the statute is focused on the equitable remedy of making the creditor whole and returning assets to it and not on a new and independent source of damages that may have come from the transfer itself. Here in particular, SEPH seeks an additional money judgment, and they explain some reasons they might want that, but they already have a money judgment against Naverve for approximately $20 million. So any attempt to seek the value of the asset transferred is a duplicative judgment of the judgment they already have. So as far as I can tell what that means, the only value to that would be either to refresh the judgment so it's newer and perhaps give them longer time to execute on it under Florida law or in an attempt to seek a bigger portion of the pie in the event money ever does come back to Naverve compared to other creditors. And I just don't think that that's the purpose or the structure of what the Florida Uniform Fraudulent Transfer Act was trying to accomplish. The text of the statute also makes clear that the catch-all provision is subject to several limitations, both that it be subject to principles of equity, that it be subject to the limitations in Section 109, and that it occur in an action for relief against a transfer. The Act's primary remedies are thus aimed at the transaction itself. They're attempting to avoid the transaction, attach the asset. And then alongside of that, the Act also authorizes specific equitable relief that is also aimed at protecting the asset, such as appointment of a receiver or an injunction against further disposition of the property. But compensatory and punitive damages or attorney's fees are fundamentally different than those limited equitable remedies designed to protect the asset itself. Turning to punitive damages in particular, I think that that is even more clearly barred because it is clearly not equitable relief. And as Your Honor correctly pointed out earlier, Florida law requires a court sitting in equity to have expressed statutory authorization for punitives because no federal appellate court that any of us have found has addressed that issue. I think highly unlikely that the Florida Supreme Court would choose to make such remedies available on the basis of the... The Florida Supreme Court has never spoken directly on that, but that's the general consensus of Florida law for the appellate courts. Understood. Similarly, Maine has amended its Uniform Fraudulent Transfer Act statute in order to allow up to double the amount of the value of the asset transferred. So other states have recognized that the statute itself doesn't speak to punitive damages, that that would be beyond its scope. And such a question would be better directed towards the Florida legislature than to the Florida Supreme Court. But if this court is uncertain about how it thinks the Florida Supreme Court would rule, if it doesn't think that the decision in Freeman makes it clear, then we do think that certification would be an appropriate option. Let me ask you a question about that, just the logistics of that. So we had to find you to be in this case, right? We had to ask, we had to go and search for someone to appear in this case. If we were to certify this to the Florida Supreme Court, would you be up for that too? I would have to talk to the court about that. I don't know if that's a question for you or my letter. Well, I guess my point is it just seems like given the fact that this is more or less a one-sided case in the sense that there's only one party who's actually in it, maybe that militates against prolonging the pain of litigation and just having us revolve it instead of certifying it. Absolutely, and I do think there is enough to make an accurate, eerie guess as to the Florida Supreme Court's likelihood of rejecting punitive damages here, especially if this court also agrees with us that a duplicate of money judgment is not available, that they are not entitled to a lien because of the waiver and lack of possession issues below. It is highly unlikely that the Florida courts would allow a claim to go forward on solely punitive damages or on solely attorney's fees. That doesn't seem particularly likely to me. Finally, just a few points on the attorney's fees section. Florida applies the American rule very strictly, and every federal court that has found to interpret the act has agreed that the Florida Supreme Court would be unlikely to grant attorney's fees here. In some, the district court got it right. SEPH originally sought relief against both the transferee and the transferor due to personal jurisdiction issues was unable to keep the transferees in the case, and then due to indispensable parties issues was unable to seek equitable relief against the transferor, leaving it with these limited and somewhat strained interpretations of the act to receive money damages, punitive damages, and attorney's fees. The Florida Supreme Court is unlikely to amend the plain text of the act in order to prolong this litigation, and unless this court has further questions, we would respectfully request that this court affirm. Thank you. You can tell your friend we did a very nice job. Thank you very much for accepting the appointment. Thank you, Judge. And I'll join in thanking our colleagues for doing what they've done. I just want to cover a couple of points that were raised, and I do want to answer, Judge Lagoa, your question, which is we're not saying that we would in any way nor could we object to a certification to the Florida Supreme Court if the court is unsure what the persuasive indication would be. On the first point, let me say this. Don't forget the DCAs. The first DCA in McCalla and the fourth DCA in Hansard, both said that money judgments, not just equity, money judgments are available against the transferor. And so the district judge in this case, technically under the rules given the rulings by their intermediate courts, would have followed the first DCA because the court was sitting in Panama City, which is the first DCA, unless the court found there was a persuasive indication that the Florida Supreme Court would hold otherwise. I don't know that a district court judge is bound by the particular DCA. I mean, in state court, obviously, the trial court is bound by the DCA where they're located, but the district courts in Florida can look at any case that an appellate court in the state of Florida has issued. As I understand, based on principles of federalism, the district court first looks to what the DCAs say because, I think it's because of the nature of certification to the Florida Supreme Court. No, I understand that, but it's not based on, you could look at a case from the third or the fourth or the first, but not if you're a state trial court. No, obviously, you're limited to the DCA where you're located. I'm sorry. I agree. Only if there's a conflict between those DCAs, then the court looks at the First Circuit. Only if there's conflict. I apologize. Thank you, Judge. Yeah, and here there's no conflict on that, right? I mean, all the DCA cases support your position. That's correct. So the point is, because you can get, and what the district judge said, the district judge jumped the DCA and went to Freeman. Only what Freeman did, answering a question from this court, on certification, by the way, asked the question whether ADER or a better liability independent cause of action was allowed against First Union Bank. Remember, in that case, First Union was neither the transferor nor the transferee. They were just the bank, and they were trying to say they were an ADER and a better. That's not where we are here. The district judge jumped to that opinion, but jumped over the fact that here we have the actual transferor, and the DCAs had said transferors are subject to money judgments, in which case, which further supports our argument that that allows for punitive damages in certain circumstances. And in those circumstances, we've alleged to exist here and often exist. So I won't repeat my argument there. Let me ask you a practical question, which I guess is just my fascination with this litigation strategy that is being pursued here. Let's say we were to hear your two options. They're not options you're going to like, but let me just give you these two options. So on one option, we say, you know what? We're going to follow these DCAs. You can pursue a judgment against the transferor, but we don't think you get attorney's fees or punitive damages. We're just going to say that ourselves. The second option is, same thing. You get a judgment against the transferor, but we're not really sure what to say on Florida law on punitive damages or attorney's fees, so we certify to the Florida Supreme Court. How much do you prefer option two over option one? I guess the other way to ask this is, do you really, really, really, really, really want punitive damages and attorney's fees such that you want to go through certification to the Florida Supreme Court? We do. I think it's so important that the law be right. In other words, right now, we have a district court opinion that is now being, that is being sought to be affirmed, which has the law wrong. Now, with all respect, or at least, you know, jumps to Freeman, which says nothing about punitive damages, which says nothing about attorney's fees. And remember, the Florida legislature, the positive law here says that any, you may recover any other relief that the circumstances may require, and the legislature could have limited it. So, it's not just that the funds are in Oklahoma and they're going to come back, and that's important to us as it is to any commercial litigator. But it's also that the law needs to be right. And I confess, I'm so grateful that the other side has been willing to be involved. Frankly, it's always better, and they've done an excellent job, certainly. And I don't think, I know Your Honor wasn't saying this, but I hope someone will take up the mantle, if you do certify it to the Florida Supreme Court, because I think this is such an important issue. And we're not saying don't certify it, we're just saying if you're unsure, we certainly understand. And I hope someone of the same caliber will step up to the plate, so let's get this right. Thank you very much. Yes, thank you very much to both of you. And, again, thank you, Ms. Heckman, for taking the appointment. We appreciate it greatly. Thank you, Judge. Thank you. Have a good day, both of you. You too. Thank you.  Thank you.